## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER C. TAYLOR,** | : | **No. 4:22cv474** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **K N B's INFLATABLES PLEASE, LLC,** | : | |
| **d/b/a KNB INFLATABLES PLEASE,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court is a motion for default judgment filed by Plaintiff

Christopher C. Taylor against Defendant K n B's Inflatables Please, LLC d/b/a

KNB Inflatables ("KNB") in this dispute involving the plaintiff's use of a service

and support dog in a place of public accommodation.  In March 2022, Taylor filed

this action against KNB pursuant to Title III of the Americans with Disabilities Act,

42 U.S.C. §§ 12181–12189 ("ADA"). (Doc. 1).  Following exhaustion of

administrative remedies, Taylor filed an amended complaint against KNB, adding

a claim for violation of the Pennsylvania Human Relations Act, 43 PA. STAT. §§

951–963 ("PHRA"). (Doc. 30).  Following a hearing regarding Taylor's PHRA

damages, this motion is ripe for disposition.

**Background**

Taylor is a combat veteran of the Vietnam War with a 100% service-connected disability as determined by the Department of Veterans Affairs.[1] (Id. ¶ 9).  Taylor suffers from post-traumatic stress disorder ("PTSD") and other physical ailments.  The plaintiff uses a service and support animal named Zeke to perform tasks related to his disabilities, including providing him with physical support, assisting him with balance and stability, and picking up and retrieving items for him.  (Id. ¶ 10).  Zeke also supports the plaintiff by calming him. (Id.)

On February 13, 2022, Taylor, along with Zeke, his grandson, and their other family members traveled to the Nittany Mall in State College, Pennsylvania. (Id. ¶ 11).  KNB operated a playground business at the mall, which included several bounce house inflatable structures. (Id. ¶¶ 5, 10-11).  After purchasing tickets for admission, a representative of Defendant KNB confronted Taylor about Zeke. (Id. ¶¶ 12-13).  KNB's representative told Taylor he had to leave the business.  She claimed that KNB's insurer did not provide coverage for dogs on the premises and that other patrons might have allergies triggered by Zeke's presence. (Id. ¶ 13).

---

[1] In considering a motion for default judgment, the court must treat the allegations in the complaint as true, except as to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)(citations omitted).  The court need not accept a moving party's legal conclusions. Id.

2

Taylor then attempted to explain to KNB that Zeke was his service and support animal. (Id. ¶ 14). He tried to show KNB's representative documents to support Zeke's status. (Id.) KNB's representative still refused to permit Taylor's entry to the business and threatened to call the police if he did not leave. (Id. ¶ 15).

Taylor and Zeke departed KNB's business and approached a Nittany Mall security guard. (Id. ¶ 18). He requested that police be contacted for assistance. (Id.) An officer from the State College Borough Police Department, Amanda Estep, ultimately arrived at the scene.[2] (Id. ¶ 19). As Taylor alleges, she told him that if he tried to enter the business again, he could be charged with trespassing. (Id. ¶ 21). KNB's representative watched plaintiff's police encounter with a smile on her face. (Id. ¶ 23). Ultimately, Estep did not force KNB to permit Taylor and Zeke into the business.

Taylor chose not to press the issue any further with the police officer. (Id.). He and his family ultimately exited the Nittany Mall. Per Taylor, he left the mall feeling humiliated. (Id.) The incident also caused Taylor's grandson to cry. (Id.)

---

[2] Estep's bodycam video recorded her interactions with Taylor. It also recorded her interactions with KNB's owners, Keith Schulman and Rebecca Bolling. (Doc. 46, Pl. Ex. 4 at 16:21-21:51). Schulman is identified through his previous attempts to represent Defendant KNB *pro se* in this matter. (See Doc. 24, 04/19/2023 Order)(Mariani, J.).

Taylor filed this action on March 29, 2022, approximately forty-five (45) days after the incident. (Doc. 1). He named KNB and the Borough of State College as defendants. The Clerk of Court initially assigned this matter to the Honorable Robert D. Mariani. Keith Schulman executed a waiver of service on behalf of KNB. (Doc. 9). KNB filed a *pro se* answer to the complaint on July 28, 2022. On September 21, 2022, Schulman participated in a case management conference on behalf of KNB.

On March 30, 2023, after KNB did not retain counsel, Taylor filed a motion to strike KNB's *pro se* answer to the complaint. (Doc. 22). Because the law only permits a corporation to appear in the federal courts through licensed counsel, Judge Mariani granted that motion to strike. (Doc. 24). Subsequently, Taylor sought leave to amend the complaint after exhaustion of his PHRA claims before the Pennsylvania Human Relations Commission. (Doc. 25). Judge Mariani also granted that motion. (Doc. 29).

Taylor filed and served the amended complaint on May 10, 2023. (Doc. 30). Count I of the amended complaint asserts a claim against KNB for violation of Title III of the ADA. Count III contends that KNB violated the PHRA. KNB did not answer the amended complaint. KNB has not participated in this litigation since the initial case management conference. At Taylor's request, the Clerk of Court entered default against KNB on June 21, 2023. (Doc. 33).

4

As noted above, Taylor also filed suit against State College Borough pursuant to Title II of the ADA and the PHRA. (Doc. 30).  State College Borough answered the amended complaint and the parties proceeded with discovery into Taylor's claims against that defendant.  On February 25, 2025, the court granted State College Borough's motion for summary judgment and dismissed that municipality from this case. (Docs. 51-52).

On February 26, 2025, Taylor filed a renewed motion for default judgment against KNB pursuant to Federal Rule of Civil Procedure 55(b)(2). (Doc. 54). The court held an evidentiary hearing on April 22, 2025, where Taylor testified. The court directed the Clerk of Court to provide notice of the hearing at all addresses associated with KNB as disclosed during the litigation.  (Doc. 56).  All mailings of the hearing notice were returned to the Clerk of Court as undeliverable. (Docs. 58–59, 61, 65).  For the reasons set forth below, Taylor's motion will be granted, and judgment will be entered in Taylor's favor.

**Jurisdiction**

Because this case is brought pursuant to the ADA, the court has subject matter jurisdiction under 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over Taylor's PHRA claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of

which the district courts have original jurisdiction, the district courts shall have

supplemental jurisdiction over all other claims that are so related to claims in the

action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution.").

The court also has specific personal jurisdiction over KNB.  KNB is a

Pennsylvania limited liability company and operated a business in Pennsylvania

at the time of the incident giving rise to this litigation. (Doc. 30, Am. Compl ¶ 5).

**Standard of Review**

The court is authorized to enter a default judgment on a plaintiff's motion

against a properly served defendant who fails to file a timely responsive pleading.

FED. R. CIV. P. 55(b)(2).  "[T]he entry of a default judgment is left primarily to the

discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir.

1984)(citation omitted).  This discretion is not without limits, however, as there is

a preference that cases be disposed of on the merits "whenever practicable." Id.

(citation omitted).

**Analysis**

### 1. Service Dogs and Title III of the ADA

Taylor relies on a service and support dog, Zeke, to aid with his disabilities.

He contends that KNB violated Title III of the ADA by precluding him from their

business.  The ADA provides that "[n]o individual shall be discriminated against

6

on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases…, or operates a place of public accommodation." 42 U.S.C. § 12182(a).  The term "public accommodation" is defined broadly by the ADA.  That definition encompasses private entities, "if the operations of such entities affect commerce[.]" 42 U.S.C. § 12181(7)  A "public accommodation" includes businesses such as 1) "a gymnasium…or other place of exercise or recreation[;]" 2) "a park…amusement park, or other place of recreation;" and 3) "a shopping center, or other sales or rental establishment[.]" 42 U.S.C. § 12181(7)(E), (I), (L).  KNB's mall-based playground business falls within this broad definition.

Pursuant to the ADA, the term "disability" means: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).  "Major life activities" include, but are not limited to performing manual tasks, walking, standing, lifting, and bending. 42 U.S.C. § 12102(2)(A).  Furthermore, "discrimination" includes, among other things: 1) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability from fully and equally enjoying any goods or services unless the criteria can be shown to be

7

necessary; and 2) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods and services unless the entity can demonstrate that the modifications would fundamentally alter the nature of the goods and services.  42 U.S.C. § 12182(b)(2)(A)(i)-(ii).

Here, plaintiff alleges a disability related to his military service and the use of a service animal to assist him with balance and stability, picking up and retrieving items, and for calming purposes.  (Doc. 30 ¶ 10).  He alleges that he was told by an employee of Defendant KNB to leave the business because he attempted to enter with a service animal.  (Id. ¶¶ 12-13).

Service dogs are not directly referenced in the ADA statute.  As explained by the Third Circuit, the DOJ issued regulations applicable to service dogs in public accommodations in 1991. Berardelli v. Allied Servs. Inst. of Rehab. Med., 900 F.3d 104, 119 (3d Cir. 2018).  Regulations applicable to public accommodations provide that they "shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). Some exceptions, such as if the animal is out of control or is not housebroken. 28 C.F.R. § 36.302(c)(2).  But "if the exceptions are inapplicable, a disabled individual's proposed accommodation of the use of [his] service animal is reasonable under the ADA as a matter of law."

8

Berardelli, 900 F.3d at 119 (citing Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1064 (5th Cir. 1997)).[3]

## 2. Service Dogs and Pennsylvania Law

Taylor also contends that KNB violated the PHRA.  Generally, PHRA disability discrimination claims are interpreted coextensively with ADA claims. See Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220, n. 21 (3d Cir. 2024)("federal courts should continue to interpret the PHRA in harmony with the ADA.").  The court, however, must be cautious as not to summarily address the PHRA claim in this context. See Berardelli, 900 F.3d at 126 (discussing distinctions in the PHRA as to damages).

Unlike the ADA, Pennsylvania's anti-discrimination statute directly addresses the use of support animals by individuals with disabilities.  Specifically, the General Assembly has declared that "[t]he opportunity for an individual…to obtain all the accommodations, advantages, facilities and privileges of any public accommodation…without discrimination because of…the use of a…support animal because of…physical handicap of the user" is a civil right, enforceable by

---

[3] The Third Circuit Court of Appeals previously deferred to these service animal regulations, i.e., the DOJ's interpretation of the ADA, pursuant to Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844 (1984). See Berardelli, 900 F.3d at 120.  Chevron has been overruled. Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 412 (2024).  Nonetheless, cases deferring to the ADA service animal regulations are still subject to statutory stare decisis. See id.  Accordingly, the court relies upon the analysis in Berardelli here.

the PHRA. 43 PA. STAT. § 953. Pursuant to the PHRA, it is an "unlawful discriminatory practice":

> (i)    For any person being the owner, lessee, proprietor, manager, superintendent, agent or employe of any public accommodation, resort or amusement to:
>
> (1) Refuse, withhold from, or deny…to any person due to use of a guide or support animal because of…physical handicap of the user or because the user is a handler or trainer of support or guide animals, either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement.

43 PA. STAT. § 955(i)(1).

The term "public accommodation, resort or amusement" is defined broadly by the PHRA using more than 200 words. 43 PA. STAT. § 954(l). The definition includes "any accommodation, resort or amusement which is open to, accepts or solicits the patronage of the general public," and specifically references businesses like the one involved in this case such as: 1) businesses where food and beverages are retailed for consumption on the premises; 2) retail stores; 3) amusement and recreation parks; and 4) gymnasiums. Id.

### 3. Entry of Default Judgment Against KNB

Taylor moves for default judgment on his ADA and PHRA claims against KNB. To prevail on a claim under Title III of the ADA, a private plaintiff must prove that: (1) he has a disability within the meaning of the ADA; (2) he was

10

discriminated against by defendant on the basis of that disability; (3) he was thereby denied goods or services; and (4) the defendant owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182; see also Haas v. Wyoming Valley Health Care Sys., 465 F. Supp. 2d 429, 433 (M.D. Pa. 2006)(citations omitted).  The liability standard for the ADA and the PHRA is the same. Berardelli, 900 F.3d at 126.

Taylor's amended complaint sufficiently avers facts supporting violations of Title III of the ADA and the PHRA by Defendant KNB.  That is, Taylor has averred disabilities related to his physical and mental health, which substantially impair multiple major life activities.  Taylor has also alleged that KNB denied him the ability to use its services because of his reliance upon a service and support animal to aid with his disabilities.  As indicated above, the term "public accommodation" is defined broadly by federal and state anti-discrimination law and includes the business operated by KNB.  Taylor has alleged outright intentional exclusion by KNB on the basis of his disabilities and KNB's failure to make modifications to existing facilities and practices because of the plaintiff's service dog.  Taylor has thus demonstrated legally and factually viable claims against KNB under federal and state anti-discrimination laws.

In determining whether default judgment should be granted, courts consider three factors: "(1) prejudice to the plaintiff if default is denied, (2)

11

whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000)(citation omitted).

Taylor will experience prejudice if default is denied. The court advised KNB long ago that it could not be represented *pro se* by one of its owners. (Doc. 24). Despite that admonition, KNB has not retained counsel despite three (3) years of active litigation involving another defendant. It ignored the amended complaint. It did not participate in the deposition of the plaintiff or in the deposition of Officer Estep. It has acted culpably by initially acknowledging Taylor's action and then disappearing from the litigation process.

As for any litigable defense, KNB has the regulatory exceptions to fall back on, that is, "[a] public accommodation may ask an individual with a disability to remove a service animal from the premises if: (i) [t]he animal is out of control and the animal's handler does not take effective action to control it; or (ii) [t]he animal is not housebroken." 28 C.F.R. § 36.302(c)(2). Regarding those exceptions, Zeke was well-behaved at the time of the incident, (see Doc. 46, Pl. Ex. 4), and during Taylor's testimony in court. Zeke is also housebroken. So, the exceptions are inapplicable and Taylor's request to use his service animal at KNB's facility was a reasonable accommodation as a matter of law. Berardelli, 900 F.3d at 119. Consequently, Taylor has demonstrated that default judgment against KNB

12

is warranted in this case on his ADA and PHRA claims. All of the facts of the amended complaint asserted against KNB are thus deemed true.

### 4. Declaratory and Injunctive Relief

The court turns next to Taylor's requests for relief. His amended complaint seeks declaratory and injunctive relief. (Doc. 30). Under Title III of the ADA, private plaintiffs may only obtain "preventative relief" in the form of "a permanent or temporary injunction, restraining order, *or other order*[.]" See 42 U.S.C. § 12188(a)(1)(referring to 42 U.S.C. § 2000a-3(a)(emphasis added); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 & n. 2 (1968)(indicating that 42 U.S.C. § 2000a-3(a) does not authorize monetary damages). Pursuant to the PHRA, "if the court finds that the respondent has engaged in...an unlawful discriminatory practice..., the court **shall** enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action[.]" 43 PA. STAT. § 962(c)(3)(emphasis added).

Discovery in this case suggests that KNB's mall-based store closed during the litigation. At the time of the evidentiary hearing, Taylor withdrew his request for a permanent injunction against KNB. (Doc. 65, Hearing Trans. ("H.T.") 04/22/2025 at 3-5). Nonetheless, Taylor's amended complaint also requests a

13

declaration that KNB's actions, practices, and policies violated Title III of the ADA.[4] (Doc. 30).

As discussed in greater detail below, Taylor explained that his federal statutory rights are particularly important to him. (Doc. 65, H.T. at 9-10, 14-15). He carries cards in his wallet explaining those rights. (Id. at 10-11; Doc. 64, Pl. Ex. 1). At the time of the incident, Taylor simply sought to settle his service dog rights with the owners of KNB through the assistance of some authority so he could watch his grandson play in the bounce houses. (Doc. 65, H.T. at 9, 12). He sought such recourse from Nittany Mall security and the State College Borough police department to no avail. (Id.) One purpose of the ADA is "to

---

[4] Although his request for prospective injunctive relief has been withdrawn, Taylor maintains standing under Title III of the ADA regarding his past injury. "Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997)(citing Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 471–73 (1982). "To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' " Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 478 (3d Cir. 2018)(quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). As for an injury in fact, Taylor has demonstrated an invasion of a legally protected interest, a concrete and particularized injury, and an actual injury. See id. at 479 (citations omitted). His injury is traceable to the conduct of Defendant KNB, not the conduct of the dismissed former co-defendant State College Borough. See id. at 480–81. Finally, Taylor's injury is redressable by the remaining requests for relief under Title III of the ADA. See id. at 481 (citations omitted).

provide a clear and comprehensive national mandate for the elimination of

discrimination against individuals with disabilities." 42 U.S.C.A. § 12101(b)(1).

Because Taylor has demonstrated that default judgment is warranted and that he

has sustained an injury in fact, the court will issue a limited, non-prospective

declaration that KNB's actions, practices, and policies violated Title III of the ADA

and the PHRA on the date of the incident.

### 5. Compensatory Damages

Unlike Title III of the ADA, the PHRA expressly permits suits for damages.

Berardelli, 900 F.3d at 126 (citing 43 PA. STAT. § 962(c)(3)). The relief provision

of the PHRA "is quite broad[.]" Keck v. Com. Union Ins. Co., 758 F. Supp. 1034,

1039 (M.D. Pa. 1991). Compensatory damages may be recovered for

humiliation, emotional distress, and mental anguish. See Taylor v. Cent.

Pennsylvania Drug & Alcohol Servs. Corp., 890 F. Supp. 360, 376 (M.D. Pa.

1995). Moreover, under Pennsylvania law, "[a] complainant's own testimony of

embarrassment and humiliation can suffice to support an award for

compensatory damages[]" for violation of the PHRA. 1400 Main Holdings, LLC v.

Pennsylvania Hum. Rels. Comm'n, 326 A.3d 1040, 1046 (Pa. Commw. Ct.

2024)(quoting Girard Finance Co. v. Pennsylvania Hum. Rels. Comm'n, 52 A.3d

523, 536 (Pa. Cmwlth. 2012)). "Damage awards under the PHRA serve a dual

purpose: to discourage discrimination and to restore the injured party to his or her pre-injury status." <u>Id.</u> at 1045 (citation omitted).

As for Taylor's testimony, the plaintiff explained that his daughter, son-in-law, and grandson, F.W., were visiting on the date of the incident. (Doc. 65, H.T. at 6). F.W. was five years old at the time. (<u>Id.</u>) F.W. is a child diagnosed with autism. (<u>Id.</u>) That day, F.W. grabbed the plaintiff's hand and said, "Pappy Chief, bounce house. Let's go to bounce house." (<u>Id.</u> at 6, 11). According to Taylor, it was one of the first few sentences F.W. ever said. (<u>Id.</u> at 11).

Taylor and his wife, daughter, son-in-law, and grandson then all travelled to KNB's business at the Nittany Mall. (<u>Id.</u> at 9). Taylor arrived with Zeke shortly after his other family members paid for admission. (<u>Id.</u>) Per Taylor, an owner of KNB told him that no dogs were allowed, and that the business would have him arrested if the plaintiff did not leave. (<u>Id.</u>) Taylor did not want to upset his grandson, so he and Zeke began to leave. (<u>Id.</u>) Nonetheless, F.W. became upset. (<u>Id.</u> at 11). F.W. started to cry and his family members removed him from KNB's business. <u>(Id.)</u> Taylor called the police because he wanted to settle the matter and see if the police could help Taylor, Zeke, and F.W. return to the bounce houses. (<u>Id.</u> at 12).

Taylor testified that being excluded from KNB's business made him feel "horrible" and "upset." (<u>Id.</u> at 11). When the police arrived, he felt that, in that

moment, the focus was on his conduct, not the business that violated anti-discrimination laws. (Id. at 12-13). He testified that the incident "hurt so bad" and "still does." (Id. at 13). Such testimony is credible. Those emotions were discernible in the courtroom three years later.

A police body camera recorded Taylor's interaction with a State College Borough patrol officer, Amanda Estep. As for this footage, Taylor spoke with Estep for approximately fifteen (15) minutes outside KNB's business in a common area of the Nittany Mall. (Doc. 46-4, 1:25-16:15). Approximately forty (40) other mall patrons walked in view of Estep's camera. Some onlookers lingered more than others. One individual passed by, turned around, and returned several times, apparently interested in the substance of the discussion. During Taylor's encounter with Estep, F.W. appeared with his mother from another portion of the mall and pulled his parents in the direction of the bounce houses. Both parents walked F.W. away from the discussion. (Id. 5:20-5:30). Taylor also testified that KNB's owners were laughing at him and making fun of him as he spoke to the police. (Doc. 65, H.T. at 13). Consequently, a family-centered positive experience for F.W. turned into a negative experience because KNB denied Taylor and his service dog access to the facility. The above referenced testimony and evidence demonstrates that Taylor experienced humiliation and embarrassment after being excluded from KNB's business.

Taylor also testified that the incident took more than an hour to conclude. (Id. at 14). The event caused him to recall negative events that he experienced in the past. (Id. at 13). Per Taylor, he spent several years in and out of the hospital following his service in the Vietnam War. (Id.) Taylor testified that this incident started to bring those memories back. (Id.) Taylor, however, expressed reluctance in providing details during the evidentiary hearing. (Id. at 16-17). He also conceded that he did not seek counseling or other mental health treatment following the incident. (Id.) Taylor testified that he was fearful talking about the incident in a therapeutic setting because it would bring up other events from his past. (Id.) The court respects the reasons for Taylor not getting into such details at the hearing and his decision not to seek formal treatment. Despite such limited testimony, however, the court can conclude from Taylor's testimony and the bodycam footage that the incident did cause the plaintiff to experience embarrassment and humiliation and that he continues to experience negative emotions when referencing the incident three years later. Such evidence supports an award of compensatory damages for embarrassment and humiliation pursuant to the PHRA in the amount of $25,000.

## Conclusion

For the reasons set forth above, Taylor's motion for default judgment will be granted. The court will enter judgment in favor of Taylor and against KNB on

Counts I and III of the amended complaint.  Regarding Counts I and III, the court will issue a declaration that Defendant KNB's conduct on February 13, 2022 violated Title III of the ADA and the PHRA.  Regarding Count III only, the court will also enter judgment in favor of Taylor and against KNB in the amount of $25,000 based on the presentation of competent, credible evidence of Taylor's embarrassment and humiliation from this incident.  An appropriate order follows.

Date: 4/25/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court